UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Julie Melton Mason, # 352212, | ) | C/A No. 5:15-cv-4963-RBH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Warden, Graham Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Julie Melton Mason ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28

U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and

Recommendation ("Report") on the Motion for Summary Judgment and Return filed by the

Warden of Graham Correctional Institution ("Respondent"). ECF Nos. 16, 17. Pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on April 14, 2016, the court advised

Petitioner of the summary judgment and dismissal procedures and the possible consequences if

she failed to respond adequately to Respondent's Motion. ECF No. 18. On May 23, 2016, the

court issued an Order advising Petitioner that she must advise the court whether she wished to

continue her Petition and file a response to Respondent's Motion for Summary Judgment by June

23, 2016. ECF No. 20. Petitioner filed a Response in opposition to the Motion for Summary

Judgment on June 14, 2016.[1] ECF No. 23; *see Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se

---

[1] Petitioner captions her Response as a motion under Fed. R. Civ. P. 59(e) and asks this court to "altar [sic] or amend the judgement entered in this case on August 30, 2012 in order to correct manifest errors of the law and fact." ECF No. 23 at 1. Based on the date given, the judgment that Petitioner references is the state-court judgment of conviction in her case. This federal court can only exercise jurisdiction under Rule 59(e) to correct or modify one of its own

prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court). Respondent filed a Reply to Petitioner's Response on June 23, 2016. ECF No. 26. Petitioner filed a Sur Reply on August 9, 2016. ECF No. 32. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.    Procedural History

Petitioner is currently incarcerated at Graham Correctional Institution, part of the South Carolina Department of Corrections prison system. ECF No. 1 at 1. On June 11, 2011, Petitioner was charged by the grand jury in Pickens County with two counts of felony DUI resulting in death and two counts of felony DUI resulting in serious injury. App. 70-77.[2] On August 30, 2012, Petitioner, represented by retained attorney Frank Eppes ("Plea Counsel"), appeared in Pickens County General Sessions Court before Honorable Letitia Verdin ("Plea Judge") to enter a guilty plea to one count of felony DUI resulting in death, one count of reckless homicide, and two counts of felony DUI resulting in serious injury. App. 3-4. The State was represented at the plea hearing by Solicitor Lisa Bentley. App. 1. Four members of the victims' family testified at the hearing. Attorney Bentley asked the plea judge to enter the maximum sentence. App. 11. After the Plea Judge explained the sentencing possibilities, App. 3-5, Petitioner indicated that she was "happy" with what Plea Counsel had "done for [her]" and that she had discussed the charges

_____

judgments, not a state-court judgment. Thus, given the timing of the submission and the rule of liberal construction of pro se pleadings, the court has docketed Petitioner's submission as a Response to Respondent's Motion for Summary Judgment in this habeas action pursuant to 28 U.S.C. § 2254.

[2] App. stands for Appendix of the record that was before the Post-Conviction Relief ("PCR") court. The Appendix is contained on this court's docket at ECF No. 16-1.

with Plea Counsel. Petitioner denied that she had "any complaint to make against [her] attorney, law enforcement or the solicitor's office . . . ." App. 5. Petitioner indicated that she understood what was going on during the plea hearing and this was confirmed by plea counsel. App. 6. Petitioner denied that anyone had forced her to plea or promised her anything to get her to plea and acknowledged her understanding that she was giving up certain constitutional rights in order to plea. App. 6-7. After Petitioner stated "guilty" when asked how she was pleading, the Plea Judge told her that she had ten days to appeal the plea and Petitioner responded "Yes, ma'am." App. 7-8.

The State's attorney recited the facts underlying the charges against Petitioner, stating that Petitioner, who was found to be under the influence of an inhalant and "low levels of benzodiazepines and diazepam," drove a truck that crossed the center line and crashed into the victims' sedan vehicle, killing the driver and a passenger and seriously injuring two other passengers. According to the State's attorney, there was a witness who stated that he observed Petitioner driving and acting erratically shortly before the crash. App. 8-9. After the State's attorney requested the maximum sentence, four of the victims' family members testified about how the car crash had affected them. App. 10-16. Plea Counsel then argued for a reduced sentence relying strongly on Petitioner's "clean record" and her lack of memory of the accident. App. 17-20. Petitioner then spoke, saying "I'm really sorry. And if I could just take it back, I would. I didn't mean to do it." App. 21. The Plea Judge then sentenced her to 20 years in prison on the felony DUI resulting in death conviction and concurrent fifteen years on the two felony DUI resulting in great bodily injury convictions. Petitioner was sentenced to a consecutive 10 years suspended on 5 years of probation on the reckless homicide conviction. App. 23. Petitioner

did not file a direct appeal.

Petitioner filed a post-conviction relief ("PCR") application on May 9, 2013, raising one ground for relief quoted verbatim: "My attorney did not believe in me and he did not fight hard enough to prove that it was not intentional." App. 27. After the State filed its Return to the PCR application, App. 33-37, on December 15, 2014 an evidentiary hearing was convened in Greenville, South Carolina before the Honorable Eugene C. Griffith, Jr. ("PCR Judge"). R. Mills Ariail, Jr. ("PCR Counsel") represented Petitioner and Assistant Attorney General Karen C. Ratigan represented the State at the hearing. App. 38. Petitioner and Plea Counsel testified. App. App. 41-61. Petitioner testified that she did not believe that her case was adequately investigated "[a]s far as the medical records." App. 41. She also testified that she thought character witnesses should have been presented because of her clean record. App. 41-42. Petitioner stated that before the accident she has used a computer duster ("the inhalant") to dry a temporary filling in her teeth and that was the last thing she remembered. App. 42-43. She said that Plea Counsel told her that the judge would be "very mad" if she tried to present a defense based on her alleged lack of knowledge of the intoxicating effect of the inhalant and that she "would be crucified." App. 45. Petitioner acknowledged that she discussed the plea and the potential sentences she was facing with Plea Counsel, but stated that she "didn't fully understand what [she] was getting into." App. 46. When PCR Counsel asked Petitioner what kind of investigation other than medical records Plea Counsel did not do, Petitioner stated "I'm not sure" and then she disputed the State's attorney's plea-hearing argument that she should have known what she was inhaling because she was a nurse. App. 47. On cross examination, Petitioner said that she did not understand the plea even though she had discussed it with Plea Counsel because she was "scared," but that she did

4

not tell Plea Counsel because she did not want to look like she did not know. App. 49-50. She said she believed that Plea Counsel should have reviewed her medical records because they would show that she "had seizures" and that inhalants contribute to having seizures. She said that Plea Counsel said he would look into the records, but she did not think he did because they were not in the discovery packet that she received. App. 50-51. On re-cross, Petitioner told PCR Counsel that she had requested relevant medical records about the alleged seizures, but had not received them. App. 52-53. No medical records were presented at the PCR hearing.

Plea Counsel testified that he was retained to represent Petitioner and that he and Petitioner extensively discussed her explanation of how the inhalant got into her system. He stated that he told her "that whether it was true or not, I did not believe a jury would buy it." App. 55-56. Plea Counsel also testified that he spoke to Petitioner about her claim that she had seizures, but he did not think that he obtained medical records about that "because of the nature of the incident, and that nature of her intoxication." App. 56. Plea Counsel testified that the State's original plea offer was 25 years, but that he believed they could do better with a "straight up" plea or "open plea." He testified that he told Petitioner that they "could beat 25 years" and that he was hoping for "something in the range between seven or eight and 15 years." App. 56-57. Plea Counsel testified that he was not concerned about character witnesses for Petitioner because she was an LPN and "had never been in trouble before" and "had an impeccable record." App. 57-58. Plea Counsel stated that "the Judge would understand that with or without character witnesses." App. 58. One cross examination, Plea Counsel testified that he knew about Petitioner's alleged history of seizures, but stated that "[t]he problem was to go to court and say I have seizure brought on by the ingestion of this air duster was not going to work." App. 58. He

5

also testified that illegal use of computer dusters was prevalent in "northern Greenville County at that time," and that if Petitioner tried to present her story about having seizures and using a duster to dry a tooth filling under those circumstances "she would be crucified." App. 59. He stated that there were no other defenses that he thought he could utilize in Petitioner's case, and that he never thought about trying to figure out how much of the computer duster was left in the can. App. 59. Plea Counsel also recounted certain facts surrounding Petitioner's behavior on the day of the accident, including her driving into a ditch and being observed acting strangely by a witness shortly before the accident, and concluded "I just felt like there was no question but that she was under the influence of this drug." App. 60-61. Neither party made a closing statement and the PCR Judge concluded the hearing. App. 61. In an Order dated January 29, 2015, the PCR Judge denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S. C. Code Ann. § 17-27-80 (2003).

### Ineffective Assistance of Counsel

The Applicant alleges she received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172,174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of

counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing, professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Porter v. State, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 US. 52, 58-59, 106 S. Ct. 366, 370 (1985); Roscoe v. State, 345 S.C. 16, 20, 546 S.E.2d 417, 4l9 (2001).

The Applicant stated plea counsel discussed the elements of the charges and possible sentences with her. The Applicant stated she explained to plea counsel that she was using computer duster to dry a filling. The Applicant stated plea counsel did not believe her. The Applicant stated plea counsel had her made a list of the medications she was taking but they did not discuss her medical records. The Applicant stated she gave the officer a Walgreens receipt where she purchased the duster, Orajel, and temporary filling. The Applicant stated plea counsel had an investigator trying to get video from the Walgreens. The Applicant stated plea counsel never discussed voluntary intoxication with her. The Applicant stated plea counsel reviewed an "open plea" offer with her and that she did not understand it. The Applicant admitted she did not tell plea counsel that she did not understand the offer. After the offer was made, the Applicant admitted she fled to Ohio while on bond. The Applicant stated the plea offer when she returned was 20 years.

Plea counsel testified he was retained in this case and that he filed the usual discovery motions. Plea counsel testified he received discovery and reviewed the substance of those materials with the Applicant. Plea counsel testified the Applicant told him that she used duster on the day of the accident. Plea counsel testified duster was "a plague" in north Greenville at that time. Plea counsel testified he had extensive discussions with the Applicant about the idea of voluntary intoxication. Plea counsel testified he attempted to find video at Walgreens to show she was using the duster to dry her tooth in the parking lot. Plea counsel testified he told the Applicant he did not believe a jury would believe her. Plea counsel testified the Applicant said she had a seizure problem. Plea counsel testified he was not sure whether he received her medical records but stated he did not believe these would have been necessary because of the nature of the Applicant's voluntary intoxication. Plea counsel testified the State had agreed to a "straight up" plea but that the Applicant fled a day or two before she was to have pled guilty. Plea counsel testified there were no new plea offers when the Applicant returned to the state and that the State still consented to a "straight up" plea. Plea counsel testified he did not recall discussing character witnesses with

the Applicant but did not believe such would have been helpful.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet her burden of proof. This Court finds the Applicant's testimony is not credible while also finding plea counsel's testimony is credible. This Court further finds plea counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds the Applicant was aware of the consequences of entering a guilty plea. The Applicant did not dispute the factual recitation by the assistant solicitor at the guilty plea hearing. The Applicant also told the plea judge that she understood the trial rights [s]he was waiving in pleading guilty, was-satisfied with counsel, and had not been coerced in any way. (Plea transcript, pp. 5-7). This Court notes that, prior to the imposition of sentence, the Applicant stated "I'm really sorry, and if I could just take it back, I would. I didn't mean to do it." (Plea transcript, p. 21).

This Court finds the Applicant failed to meet her burden of proving plea counsel should have obtained her medical records. Both parties agree the Applicant told plea counsel about her alleged history of seizures. The Applicant, however, did not produce her medical records for this Court to review. Without such records, this Court cannot speculate as to the potential impact they may have had upon the defense case. See Palado v. State, 333 S.C. 506, 513, 511 S.E.2d 62, 66 (1999) (holding that, since the contents of challenged documents were not presented at the PCR hearing, the Applicant could not demonstrate how the failure of counsel to obtain these documents prejudiced the defense). Regardless, plea counsel testified he could not really argue that a seizure was brought on in this case as a result of the Applicant using the duster. This Court agrees. This was a case of voluntary intoxication as the result of the Applicant's use of a chemical (computer duster) and the Applicant has failed to demonstrate that plea counsel would have been able to argue this triggered a seizure. As such, plea counsel offered a valid explanation of why the Applicant's medical records were not necessary to the defense. See Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel).

This Court finds the Applicant failed to meet her burden of proving plea counsel should have presented character witnesses at the plea hearing. The Applicant, however, did not present testimony from any character witnesses at her PCR hearing. As these alleged witnesses did not testify at the evidentiary hearing, any discussion regarding what they would have testified about at the guilty plea hearing is purely speculative. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a

PCR applicant <u>must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence</u> at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial.") (emphasis in original). Regardless, plea counsel testified he was not concerned about presenting character witnesses because the Applicant had no prior offenses and the plea judge would understand the nature of the case. <u>See Roseboro v. State</u>, 317 S.C. at 294, 454 S.E.2d at 313.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the <u>Strickland</u> test -- that plea counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that plea counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of <u>Strickland</u> -- that she was prejudiced by plea counsel's performance.

This Court concludes the Applicant has not met her burden of proving counsel failed to render reasonably effective assistance. <u>See Frasier v. State</u>, 351 S.C. at 389, 570 S.E.2d at 174.

<u>**All Other Allegations**</u>

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

<u>**CONCLUSION**</u>

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during her guilty plea and sentencing proceedings. Counsel was not deficient in any manner and the Applicant was not prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

App. 64-69. No post-hearing motions were filed. PCR counsel filed a Notice of Appeal on

Petitioner's behalf on March 10, 2015. ECF No. 16-2. On June 8, 2015, Appellate Defender

Robert M. Pachak filed a *Johnson* Petition for Writ of Certiorari on Petitioner's behalf. ECF No.

16-3.[3] The sole issue presented, quoted verbatim, was: "Whether plea counsel's representation failed to meet the requirements of meaningful adversarial testing?" *Id.* at 3. Petitioner did not file a pro se brief in support of the Petition for Writ of Certiorari. On September 3, 2015, the Supreme Court of South Carolina denied the petition for certiorari without making specific findings and issued the Remittitur on September 21, 2015. ECF Nos. 16-4. 16-5. The remittitur was filed with the Pickens County Clerk of Court on September 24, 2015. ECF No. 16-6. This habeas Petition was received by the Clerk of Court in Columbia, South Carolina on December 15, 2015. ECF Nos. 1, 1-2.

II.     Discussion

A.     Federal Habeas Issues[4]

Petitioner raises the following issue in her federal Petition for a Writ of Habeas Corpus, quoted verbatim:

---

[3] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), addressing the procedures for counsel to follow when filing what they perceive to be meritless appeals in state PCR cases pursuant to *Anders v. California* and requesting to be relieved from representation.

[4] In her Response to Respondent's Motion for Summary Judgment, filed on June 14, 2016, Petitioner asserts additional grounds for relief: 1) failure to file a direct appeal; 2) failure to prove lack of intent; 3) failure to "set the record straight." ECF No. 23 at 7-15. Even though Petitioner never filed a motion to amend her Petition to include these grounds in her Petition, and even though her § 2244(d) statute of limitations had already run when she filed her Response and the new points, because they appear to arise from a common core of operative facts as the originally presented ground (ineffective assistance of counsel in the context of a guilty plea) and therefore related back to the filing date of the Petition, these grounds will be addressed out of an abundance of caution and under the rule of liberal construction of pro se pleadings. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005) (interpreting Fed. R. Civ. P. 15(c)(2) in the context of federal habeas actions and holding that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order").

**GROUND ONE**: Ineffective Councel [sic]/failure to introduce and examine all evidence Epps failed by not telling the truth in transcript

. . . .

Mal-Phesus [sic] -- misdirection of counsel. Not working for the best intrest [sic] of the client or the court. Vitally pertinent information and evidence never investigated. Counsel had a lack of motion for discovery that was never introduced because I could not pay 20,000 for a trial. The court should hear the existing evidence which did not appear in the record of the proceeding in the Supreme Court, the court will find that caused "the record" of such facts by exercise of reasonable diligence.

ECF No. 1 at 5.

**GROUND TWO**:      Failure to file a direct appeal[5]

Petitioner states that she does not remember much of the day she pleaded guilty, including the Plea Judge's statement to her about the "10 day appeal." She asserts that Plea Counsel should have perfected a direct appeal on her behalf because her version of the use of the inhalant was different from that of the prosecutor.

**GROUND THREE**:  Failure to prove lack of intent

Petitioner states that Plea Counsel should have proved that she had no malice in her heart and that he should have presented evidence of the tooth pain she was experiencing, her "financial condition," and "battered wife syndrome" as justification for her conduct. Petitioner contends that Plea Counsel should have requested a preliminary hearing.

**GROUND FOUR**:      Failure to "set the record straight"

Petitioner states that Plea Counsel should have produced evidence to show that she did not intend to cause the accident that she was charged with causing, including evidence of two subsequent suicide attempts, and should have objected to the prosecutor's statement during the plea hearing.

**GROUND FIVE**:      Failure to tell the truth about suicide attempts after the wreck

Petitioner states that the victims were lead to believe that she was "on a suicide

---

[5] Petitioner labels this "Ground 1" in her Response; however, Ground One is actually the ground she raised in her Petition. Therefore, the additional grounds for relief raised in the Response are numbered Ground Two through Ground Five.

mission, to kill these people," and Plea Counsel did not tell her that she could plead "no contest" and did not object to the prosecutor's factual statement.

ECF No. 23 at 7-15.

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v.*

*Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed her Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of her claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011);

13

*Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas

15

review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 179. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 563 U.S. at 181. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id*. at 182 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101.

2.     Procedural Bar

16

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise defaulted seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i) there is an absence of available State corrective process; or
>
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002)

(holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has defaulted his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id*.

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

[state procedural rules promote] not only the accuracy and efficiency of judicial

19

> decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally defaulted his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's contention, it is a petitioner's burden to raise cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.  Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. Pursuant to *Martinez v. Ryan*, an error by a prisoner's post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if: (1) state law required the prisoner to wait until post-conviction review to raise *Strickland* claims; (2) the prisoner's underlying *Strickland* claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the *Strickland* standard. 132 S. Ct. at 1318-19.

### 3.    Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a

reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id.*

III.     Analysis

A.     Procedurally Barred Grounds Two through Five

These Grounds were first raised before this court in Petitioner's Response to the Motion for Summary Judgment, *see supra* note 4, and, therefore, the first opportunity for Respondent to respond to them was through the Reply. ECF No. 26. In that Reply, Respondent contends that Petitioner's Grounds Two through Five are procedurally defaulted because they were not presented to any state court for consideration. ECF No. 26 at 2-3. In her Sur Reply, Petitioner responds that Respondent incorrectly stated that Petitioner pleaded guilty to "murder" and used an incorrect date when discussing the topic of statute of limitations. ECF No. 32 at 1. Petitioner also indicates that she obtained medical records that Plea Counsel did not obtain and that they support her argument that Plea Counsel should have formulated a defense based on her dental and medical records. *Id.*; ECF No. 32-3. Petitioner does not respond to Respondent's contentions that Grounds Two through Five are procedurally defaulted.

b.     Discussion

Petitioner does not make any argument in her Response to the Motion for Summary Judgment or her Sur Reply now before the court that specifically references "procedural default" or "procedural bypass" despite Respondent's clear contention that this court should not address the merits of Grounds Two through Five. Instead, she appears to argue the merits of her primary contention that Plea Counsel failed to adequately investigate the charges to which she pleaded

guilty and failed to put forth character witnesses and evidence in the form of her medical records.[6]

The undersigned's independent review of the record in this case discloses that Respondent's contention -- that none of Petitioner's additional grounds for relief raised for the first time in her Response was raised as an issue for consideration before any state court -- is correct. The only issue presented to the PCR court was "[m]y attorney did not believe in me and he did not fight hard enough to prove that it was not intentional." ECF No. 16-1 at 27. The PCR Judge only addressed Plea Counsel's investigation as applied to Petitioner's medical records and to the use of character witnesses. ECF No. 16-1 at 67-68. Thereafter, the only issue presented to the Supreme Court of South Carolina was "[p]lea counsel's representation failed to meet the requirements of meaningful adversarial testing." ECF No. 16-3 at 5. In that minimal brief, PCR Appellate Counsel again referred to Plea Counsel's failure to obtain medical records or call character witnesses, but there were no references made in any of the state proceedings to the failure to conduct a preliminary hearing, failure to perfect a direct appeal, failure to present expert witnesses, failure to disprove malice, or failure to object to the State's factual statement at the plea hearing. Thus, Respondent's position that Grounds Two through Five were procedurally bypassed and therefore barred from consideration by this court is well taken. Moreover, Petitioner's failure to assert the required cause for and prejudice from such bypass or otherwise

---

[6] Although Petitioner submitted numerous medical reports along with her Response to the Motion for Summary Judgment, ECF No. 23-2, this court will not consider those reports because they were not presented to any state court and they are not necessary to the proper determination of the outcome of this case. *See Cullen v. Pinholster*, 563 U.S. at 181 ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

directly address Respondent's contentions of procedural default/bypass amounts to a concession

on this point. *See Petrucelli v. Dep't of Justice*, No. 11-1780 (RBW), 2014 WL 2919285, at *7

(D.D.C. June 27, 2014 (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107) (D.D.C.

2008); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir.

2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

Accordingly, this court should not address the merits of these Grounds and Respondent's Motion

for Summary Judgment should be granted on Petitioner's Grounds Two, Three, Four, and Five.

        B.       Merits Analysis: Ground One

             1.       Ground One: Ineffective Councel [sic]/failure to introduce and examine all evidence Epps failed by not telling the truth in transcript

                 a.      The Parties' Contentions

Respondent contends that the PCR Judge's decision that Plea Counsel was not ineffective

was based on a reasonable application of the facts and was not contrary to established federal law

where the record supports the PCR Judge's conclusion. Respondent bases this contention on Plea

Counsel's testimony that he had investigated the case and had made a strategic decision to not

obtain medical records or call character witnesses because of the circumstances surrounding the

wreck and Petitioner's obvious good character. Respondent also contends that the PCR Judge's

decision is reasonable where Petitioner told the Plea Judge that she was satisfied with Plea

Counsel's service and there is no valid reason for this court to discredit her testimony to that

effect and where the PCR judge found that Petitioner's PCR testimony lacked credibility, but

that Plea Counsel's testimony was credible. ECF No. 16 at 18-20. Respondent further contends

that Petitioner cannot show prejudice from Plea Counsel's failure to obtain her medical records

because the records were not produced during the PCR proceedings. *Id.* at 20-21. Petitioner responds with her version of the events that led to the automobile accident that formed the basis of her convictions and impliedly asserts through discussion of medical records and character witnesses in connection with defaulted grounds that the PCR Judge's determination that Plea Counsel was not ineffective was unreasonable in light of those facts. ECF No. 23 at 3-6, 8, 11. Respondent replies that Petitioner is restricted to reliance on the evidence that was presented in state court and cannot present new evidence to this court. ECF No. 26 at 3-4. Petitioner sur-replies that there is law holding that a specific intent crime can be defended against by showing that permanent mental illness caused by drug use made the person not understand right from wrong. Petitioner also sur-replies that she did not have illegal drugs in her system and that financial abuse from her partner caused her to try to fix her tooth by herself, resulting in the accident. ECF No. 32-2 at 2-3.

b.     Applicable Law

The Fourth Circuit has held that counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d at 1352. "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. at 885. "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* However, *Cullen v. Pinholster*, 563 U.S. at 181, holds that a federal courts' review under § 2254 is limited to "the record that was before the state court that adjudicated the claim on the merits," and both the Fourth Circuit, this court, and South Carolina state courts have found that a habeas petitioner or PCR applicant does not sustain

25

his burden of proof on an ineffective-assistance claim for failure to call witnesses if the proposed witness is not called to provide testimony to the state court considering the claim. *E.g.*, *Bassette v. Thompson*, 915 F.2d 932, 939-41 (4th Cir. 1990); *Joe v. Padula*, No. 9:11-cv-1090-TLW-BM, 2012 WL 2339634, at *7 (D.S.C. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 2325662 (D.S.C. June 19, 2012); *see also Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) ("This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."); *Glover v. State*, 458 S.E.2d 539, 540 (S.C. 1995) ("[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."); *Clark v. State*, 315 S.C. 385, 434 S.E.2d 266, 267-68 (S.C. 1993) (pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different); *Underwood v. State*, 309 S.C. 560, 425 S.E.2d 20, 22 (S.C. 1992) (prejudice from trial counsel' s failure to interview or call witnesses could not be shown where witnesses did not testify at PCR hearing). Furthermore, where records or other documentary evidence is the basis for a PCR issue, a petitioner will not prevail if the records or documents are not produced at the PCR hearing to enable the court to consider them and not speculate on their potential impact on the case. *Palacio v. State*, 511 S.E.2d 62, 66 (S.C. 1999); *see Boston v. Reynolds*, No. 5:14-cv-4473-MGL-KDW, 2015 WL 9583320, at *6 (D.S.C. Nov. 17, 2015) (failure to present medical records made petitioner's claim of prejudice from "failure to 'look into' . . . medications" speculative).

Also, where trial strategy is concerned in an ineffective-assistance-of-counsel claim, this and other federal courts have adhered to the United States Supreme Court's statement that "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Hamilton v. Warden, Lieber Corr. Inst.*, No. 5:13-2506-MGL, 2015 WL 251243, at *17 (D.S.C. Jan. 20, 2015) (quoting *Strickland*, 466 U.S. at 689); *see Emmett v. Kelly*, 474 F.3d 154, 167-69 (4th Cir. 2007) (no prejudice to petitioner from counsel's trial strategy not to call certain witnesses in mitigation); *Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's "plausible strategic judgments.") (quoting *Bunch v. Thompson*, 949 F.2d 1354, 1364 (1991)). Furthermore, the United States Supreme Court has held that

> deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations . . . : The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence. A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence.

*Premo v. Moore*, 562 U.S. 115, 129 (2011). Finally, the Fourth Circuit has held that a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). Additionally, the Supreme Court has ruled that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The Fourth Circuit has also held that

district courts should "accord appropriate deference" to the state PCR court's factual findings and that such findings are presumed to be correct and can only be overcome by the presentation of "clear and convincing evidence." *Watkins v. Rubenstein*, 802 F.3d 637, 643 (4th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1) and *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011)).

c.     Discussion

Having reviewed the record before the PCR Judge and this court, the undersigned finds that Petitioner has not sustained her burden of proof to show that the PCR Judge's decision on her properly exhausted claim of ineffective assistance of plea counsel was unreasonable or contrary to established federal law. Initially, Petitioner's statements about her version of the facts, ECF No. 23 at 2-6, have been considered here as they clearly were considered during the PCR proceedings where Petitioner testified at length regarding her belief that her medical records would have provided her a defense. App. 42-45, 50, 52-53. However, none of those statements should change the outcome of this case because the PCR Judge's findings and conclusions are reasonable on this record. The record shows that Plea Counsel, who the PCR Judge found to be credible, expressed valid strategic reasons for not pursuing Petitioner's medical records and for not presenting character witnesses at the plea hearing.

According to Plea Counsel's testimony, he was aware of Petitioner's claim that she ingested the inhalant without knowledge of its intoxicating effects when she sprayed the inhalant in her mouth to dry a tooth that she was temporarily filling. App. 55. But, he was also aware of the statement of an eyewitness who observed Petitioner acting erratically after having run off the road shortly before the accident that resulted in the victims' deaths and injuries. App. 60. Plea Counsel testified that he did not believe a judge or a jury would look favorably on a defense

based on Petitioner's medical records under those circumstances, even if the records did show a history of seizures. App. 55-56. Under the rule of deference to both legal strategy and state-court decisions, the undersigned agrees with the PCR Judge's determination that Plea Counsel's strategy was reasonable.

Additionally, insofar as Petitioner's claim that Plea Counsel was ineffective for failing to present character witnesses on her behalf at the plea hearing is concerned, Plea Counsel testified that he saw no reason for such witnesses given Petitioner's clean record up to that time. App. 57-58. In his argument for a reduced sentence, he did make it clear to the Plea Judge that Petitioner "lived an exemplary life" and had a "clean record." App. 17-18. Plea Counsel also told the Plea Judge that Petitioner had been "extremely depressed and despondent over this accident." App. 18. Moreover, Petitioner did not produce any witnesses at the PCR hearing that she would have liked to have testify on her behalf at the plea hearing, thus leaving the PCR Judge to speculate as to any effect their testimony might have had. Under these circumstances and on this record and affording proper deference, the undersigned finds that Plea Counsel expressed a reasonable legal strategy on this issue and the PCR Judge's determination that Petitioner failed to carry her burden of proof on the issue of ineffective assistance of counsel was a reasonable one.

Finally, even though the PCR Judge did not extensively address the prejudice prong, App. 68, the undersigned finds that even if Plea Counsel should have done the investigation that Petitioner contends he should have, Petitioner was not prejudiced by any failure on Plea Counsel's part. Petitioner admitted that she understood that she was facing a trial that could have resulted in convictions that carried sentences up to "85 years, life without parole." App. 47. Also, there was the eyewitness testimony about her behavior shortly before the accident that could

have contradicted any defense based on a claim that the inhalant caused a seizure. Through Plea Counsel's services, she was allowed to plead guilty and received more lenient sentences. Thus, the record shows that Petitioner has not sustained her burden of showing prejudice from any ineffectiveness. Accordingly, Respondent's Motion for Summary Judgment should be granted as to Petitioner's Ground One.

IV.    Conclusion

The undersigned has considered all five of Petitioner's Grounds for habeas relief and recommends that the Petition be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 17, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


October 20, 2016                                          Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties' attention is directed to the important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).